**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

PATRICK CHAVEZ, et al,

        Plaintiffs,

v.                                           No. CIV 02-562 JCH/ACT

CITY OF ALBUQUERQUE,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER COMES** before the Court on Defendant's Motion for Summary Judgment, filed March 15, 2007 [Doc. 231], and Plaintiffs' Motion for Summary Judgment, filed April 9, 2007 [Doc. 236].  The Court, having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the motions are well taken in part and will be granted in part.

**BACKGROUND**[1]

The City of Albuquerque ("City") is a municipal corporation, operating under the laws of the State of New Mexico, and is an employer within the meaning of the Fair Labor Standards Act ("FLSA").  Plaintiffs are approximately 780 current and former City employees who hold or have held various jobs within the City and are or were members of various unions.

I.    Overtime Payment Process Utilized by the City.

The City makes overtime payments in accordance with (a) various collective bargaining agreements ("CBAs") negotiated by its employees' unions (or in the case of non-union

---

[1] Except where otherwise noted, the following facts are undisputed.

represented employees, the City's written pay policies), or (b) or the FLSA.  To determine the amount of wages owed to each employee during a given pay period, the City utilizes a dual method of pay calculation whereby it compares the employee's wage entitlements under the applicable CBA (*i.e.*, contractual wages) to the employee's wage entitlements under the FLSA (*i.e.*, statutory wages).  The City pays pursuant to whichever calculation yields the greater amount for the employee.  The City completes a dual calculation for each employee for each pay period, with the exception of employees the City categorizes as exempt from overtime premiums under the FLSA.  The City compensates such employees solely pursuant to the terms of the applicable CBA.

The CBAs provide for the payment of certain overtime premiums that are not required by the FLSA.  For example, certain CBAs require the payment of daily overtime premiums, payment of overtime premiums to police after 40 hours in a workweek rather than after 43, payment of overtime premiums on holidays, and inclusion of holiday pay, paid leave, and other time not actually worked ("nonwork pay") in calculating overtime entitlements.[2]  As provided in the CBAs, contractual overtime requires that certain hours be counted toward reaching CBA overtime thresholds that would not otherwise be counted under the FLSA in determining whether an employee worked over 40 hours in a workweek.  Additionally, contractual overtime is calculated at one and one-half times the employee's "base" hourly rate.  The employee's base rate excludes the following payments:  shift differential pay, hazardous duty pay, longevity pay,

---

[2] This Memorandum Opinion and Order draws a distinction between "overtime premiums" and "overtime pay."  Overtime premiums constitute the additional pay of one-half the wage on overtime hours (.5 times the regular wage).  Overtime pay constitutes both the standard wage for an hour of overtime work (straight pay on overtime hours) *plus* the one-half premium pay on that hour of overtime work, the sum of which is equal to one and one-half times the regular wage.

superlongevity pay, bilingual pay, education pay, and firearms qualification pay.  Contractual overtime premiums are not based on FLSA requirements, but relate solely to the contractual obligations provided for in the applicable CBA.

Once the City calculates the employee's contractual overtime premium, the City determines whether the employee actually has worked the requisite hours during the workweek in question to be entitled to overtime premium pay under the FLSA.  The City does not include hours paid but not actually worked in determining whether the employee's hours exceed the statutory threshold.  If an employee's actual hours of work exceed 40 or if a fire protection and law enforcement employee's ratio of the number of hours worked to the number of days in the work period exceeds the applicable standard under Section 207(k) of the FLSA, the City calculates the employee's statutory overtime entitlement.

The City calculates an employee's FLSA overtime as follows.  If a City employee's base rate of pay is $15.00/hour, and the employee received a bonus equal to $16.35 for a 48-hour workweek, the City would (1) determine the bonus rate per hour by dividing $16.35 by 48 (the number of hours actually worked), which totals $.340625, (2) determine the straight time base pay for a 40-hour regular workweek[3] by multiplying 40 hours by $15.00/hour, which totals $600.00, (3) determine the bonus pay for a regular 40-hour week by multiplying 40 hours by $.340625, which totals $13.63, (4) add those two numbers for a regular 40-hour week together ($600.00 + $13.63), which totals $613.63 in straight time pay for a regular 40-hour week, (5)

---

[3] The Memorandum Opinion and Order refers to a 40-hour workweek as a "regular" workweek.  "Regular pay" constitutes all pay (including bonuses) received for a regular workweek.  "Straight time pay," in contrast, comprises all wages paid at the straight time rate. Straight time pay, thus, may include wages for hours worked beyond 40 or be limited to pay on 40 hours.

determine the total overtime rate of pay (for any hours worked beyond 40 hours per week) by (a) adding the base pay of $15.00/hour with the bonus pay of $.034625/hour ($15.24), (b) multiplying $15.34 by eight (the number of hours worked over 40), which yields a total straight time pay on the overtime hours of $122.72, and (c) multiplying $122.72 by one and one-half, which totals $184.08 in overtime pay (of which $6136 is an overtime premium), and (6) add the straight time pay of $613.86 for a regular 40-hour week, to the total straight time and overtime premium pay of $184.08 for the eight hours beyond 40, for a total pay of $797.71.

The City also maintains that another way of calculating overtime pay is as follows: (1) determine the bonus rate per hour by dividing $16.35 by 48 (the number of hours worked), which totals $.340625 (same as step one in the preceding example), (2) add the hourly bonus rate of pay of $.340625 to the hourly rate of pay of $15.00, which totals $15.34/hour, (3) multiply the hourly pay by 48 hours (the total number of hours actually worked in the workweek; not 40 hours), for a total of $736.35[4] for straight time pay,[5] (4) determine the overtime rate of pay by (a) multiplying $15.34 by one-half (not one and one-half, as in the prior example), which totals $7.67, and (b) multiplying $7.67 by eight (the number of hours worked beyond 40), which totals $61.36 for the overtime premium on the hours beyond 40, and (5) add the total straight time pay

---

[4] The City represents that the total is $736.35. The actual total, however, is $736.32, three cents less than the City maintains.

[5] Note that this method includes hours worked beyond 40 hours per week (*i.e.*, the actual number of hours worked, which in this example is 48) in determining straight time pay. Therefore, under this method, the total straight time pay equals $736.35. Under the former method, the pay is comprised only of the regular pay, *i.e.*, the hourly rate and bonus rate for a regular 40-hour workweek. Therefore, the total regular pay for a 40-hour workweek under the former method is lower, *i.e.*, $613.63, than the total straight time pay for the hours actually worked.

of $736.35 to the total overtime premium of $61.36, for a total pay of $797.71.[6]

Once the City calculates the FLSA and CBA rates of pay, the City compares the employee's compensation under the applicable contract or the City policy with that due under the FLSA and pays the employee the greater amount.  If the FLSA requires an additional amount beyond what has already been paid, that amount is reflected in the form of an adjustment designated as "FLSA" pay on the employee's paycheck.

The City does not point to any regulation or authority supporting its decision not to consider CBA requirements in calculating the regular rate of pay under the FLSA.  The City attempts to comply with the FLSA by relying upon a manual entitled "State and Local Government Employees Under the Fair Labor Standards Act," issued by the Employment Standards Administration, Wage and Hour Division of the Department of Labor, which contains guidelines for the payment of statutory overtime pay.  Additionally, the City relies upon the specific examples set forth in Department of Labor regulations.

II.     <u>Pay Augmentation</u>.

Janet Hollyfield, a 25-year veteran with the City, who was employed as Assistant Accounting Officer by the City, testified that when the City calculates the time and one-half rate, the rate is time and one-half of "the employee's hourly rate plus any nondiscretionary additional pays."  Ms. Hollyfield also testified that nondiscretionary bonuses "as covered by FLSA include items that do not vary based on the number of hours that an employee works and are payments that the employee and the employer agree that the employee will receive. . . .  Some of these include longevity, super longevity, there are some academic incentives, bilingual pay."

_____

[6] Although the City represents that the total is $797.71, the actual total is $797.68.

5

The City's expert, Lloyd Hill, former Assistant District Director of the Chicago Regional Office of the Wage and Hour Division in the Department of Labor and 43-year employee of the Department of Labor, testified that the FLSA requires the City to "total up total remunerations and divide it by hours worked and come up with a regular rate and pay additional halftime for the overtime hours on that regular rate total remunerations divided by hours worked," and that incentives are "part of the remunerations, so they would be part of the regular rates."  In response to the question, "Are the incentives part of the hourly rate," Mr. Hill responded, "I presume they are.  I mean, if you are just paid on--I presume they are, but I don't want to--and there may be more incentives than I know about."  Mr. Hill further testified that in the examples he has seen of the City's pay plan, the City is paying correctly.  Mr. Hill then described the things that could be "additives" to the base rate of pay, such as include "longevity" pay or "shift differential" pay.

III.    Relevant Contractual Provisions of the CBAs.

The normal workweek for most City employees is set forth in the CBAs.  The normal workweek is generally 40 hours per week, consisting of five, eight-hour days, or four, ten-hour days, except for employees covered by Section 207(k) of the FLSA.  For example, the contracts between the Albuquerque Police Officers Association and the City state that the "normal workweek will be forty hours."  The contracts also state that "for the purpose of computing overtime, paid leave shall be considered time worked, as per Section 34 (FLSA)."

The CBA agreements between the City and the Albuquerque Police Officers Association, as well as between the City and the Albuquerque Firefighters Association, further state, "Under the [FLSA,] paid leave is not considered time worked for the purpose of computing overtime and the regular rate for the purpose of computing overtime includes all remunerations.  The parties

thereto agree that for the purpose of computing overtime, paid leave will be considered time worked and the regular rate includes the hourly rate with no other remunerations included."

IV.    <u>The City's Relevant Personnel Rules</u>.

Rule 302.2 of the City's Personnel Rules and Regulations provides, "A non-exempt employee shall not work more than the regularly scheduled forty (40) hour workweek without prior approval of the department director . . . .  Working overtime without prior approval is considered just cause for disciplinary action up to and including termination."

Rule 302.2 further provides, "As a condition of employment, employees may be required to work overtime . . . .  (W)hen overtime is required for non-exempt employees, compensation must be in accordance with the Fair Labor Standards Act (FLSA) and any applicable collective bargaining agreement."

V.    <u>Plaintiffs' Expert Testimony</u>.

Plaintiffs present additional facts based upon the deposition testimony and expert report of Judith A. Wagner, an accountant with a college degree in Mathematics.  The City urges the Court to disregard these additional facts on the ground that the Court has barred this testimony. The City points to Plaintiffs' representation in their response that Ms. Wagner will "assist in determining whether [the City's calculation of overtime] is consistent with the FLSA," and then claims that the Court's September 26, 2006, order contained a "clear ruling" that Ms. Wagner could not testify to this end.  In its order, however, the Court specifically recognized that Plaintiffs were maintaining in their response that "[Wagner] [would] provide information regarding how the City was paying overtime compensation in order to assist the parties in determining whether that is consistent with the FLSA," and nonetheless determined that Ms. Wagner would be allowed to testify consistent with the representations contained in Plaintiffs'

response.  The Court did conclude, however, that Ms. Wagner would not be allowed to render

legal opinions.  The Court reserved ruling until trial on whether Ms. Wagner would be allowed

to testify to her understanding of the requirements of the FLSA, so that it would be able to rule

on any objections with greater context.  Because the Court has not barred Ms. Wagner's

testimony, with the exception of any legal opinions, the Court declines to avail itself of the

City's blanket invitation to disregard all facts based upon Ms. Wagner's expert report and

deposition testimony.

  The Court nonetheless concludes that certain of Ms. Wagner's assertions constitute legal

opinions not admissible at trial.  The Court therefore declines to consider them.  For example,

Plaintiffs' additional fact five states, "The City's methodology in determining overtime pay is

not consistent with Section 207(a) of the FLSA which requires payment of overtime

compensation for hours worked in excess of the applicable maximum hours standard at a rate not

less than one and one-half times the regular rate."  This "fact" is actually a legal conclusion that

is not within the province of an expert.  Likewise, Plaintiffs' additional fact six, which states,

"The methodology employed by the City in the calculation of overtime due has resulted in an

underpayment of City Employees," and Plaintiffs' additional fact nine, which states that the

"City of Albuquerque does not perform calculations of Police Department employees' overtime

pursuant to the FLSA," are legal conclusions.  Such conclusions are not admissible at trial and

therefore will not be considered by this Court.

  The Court will consider the following assertions of Ms. Wagner.  Under the City's

calculation of overtime wages, "the bonus that is paid on a non-overtime basis is reduced . . .

incrementally for every hour of overtime that an employee works."  Moreover, the City

considers that pursuant to the FLSA a bonus covers all hours that an employee works, so that the

more hours an employee works, the lower his or her bonus per hour will be.

Ms. Wagner has further explained that when calculating overtime due under the FLSA the City has not considered paid leave as hours worked, and that when calculating overtime due under the respective collective bargaining agreements, the City has not included bonuses, such as longevity or other incentive pay, in the calculation of the base rate upon which the overtime rate is calculated.

## **STANDARD**

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the movant will not bear the burden of proof at trial, this burden may be met by pointing to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).  Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at

324 (quoting Fed. R. Civ. P. 56(e)).

Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

Cross-motions for summary judgment are treated separately, so that the denial of one does not require the granting of the other. *Christian Heritage Academy v. Okla. Secondary Sch. Activities Ass'n*, No. 04-6342, 2007 WL 1041401, at *5 (10th Cir. Apr. 9, 2007). When the parties file cross motions, summary judgment is inappropriate if disputes remain as to material facts. *Id.*

## DISCUSSION

I.    Consideration of Contractual Overtime in Determining the FLSA "Regular Rate".

The parties dispute whether the City's method of performing two separate calculations of overtime, one pursuant to the FLSA (which includes nondiscretionary bonuses but not nonwork pay) and the other pursuant to the CBA (which includes paid leave as days worked but not nondiscretionary bonuses), and choosing to pay the employee the higher of the two, comports with the requirements of the FLSA. Defendants argue that the FLSA does not enhance overtime entitlements pursuant to CBAs (and conversely that CBAs do not enhance entitlements under the

10

FLSA), and that Plaintiffs therefore err in trying to overlap the calculations.  Plaintiffs claim that the City's novel method of making one calculation under the FLSA that ignores the requirements of the CBAs and another calculation under the CBAs that ignores the FLSA is unprecedented and in violation of the FLSA.  The facts are not in dispute, and the Court therefore may decide this issue as a matter of law.

Section 207(a) of the FLSA provides in pertinent part,

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce, or in the production of goods for commerce, for a work week longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  In other words, Section 207(a) requires employers to compensate employees at one and one-half times the "regular rate" for all hours worked over 40 hours in one week.

Section 207(e) provides that "the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee." *Id.* § 207(e).  Courts have explained that the regular rate is the hourly rate actually paid to the employee for the normal, non-overtime workweek for which he is employed.  *Aaron v. City of Wichita*, 54 F.3d 652, 655 (10th Cir. 1995) (citing *149 Madison Avenue Corp. v. Asselta*, 331 U.S. 199, 203 (1947)); *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 459-60 (1948) ("Where there are no overtime premium payments the rule for determining the regular rate of pay is to divide the wages actually paid by the hours actually worked in any workweek and adjudge additional payment to each individual on that basis for the time in excess of forty hours worked

11

for a single employer.").  The Supreme Court has further explained that "[t]he regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the work week, exclusive of overtime payments.  It is not an arbitrary label chosen by the parties; it is an actual fact.  Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation."  *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424-25 (1945); *see also O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003) (explaining that "[u]nder [Section 207(e)] and the relevant case law and interpretive regulations, the regular rate . . . must be discerned from what actually happens under the governing employment contract").

The City's method of calculating FLSA overtime independent of the agreed-upon wages in the CBAs violates the FLSA.  The FLSA and Supreme Court precedent specifically require employers to consider all payments the parties have agreed employees shall receive in determining the "regular rate" of pay for purposes of calculating FLSA overtime pay.  By wholly ignoring the CBAs, the City misunderstands the "very nature" of the regular rate calculation under FLSA.  *Walling*, 325 U.S. at 424.  To comply with the FLSA, the City must look to the governing CBA to determine the payments to which it agreed, and from the CBA, mathematically calculate the regular rate of pay.  *Cf. id.* at 425-26 (looking to the employment contracts to determine the hourly rate actually paid for the normal, non-overtime workweek, *i.e.*, to determine the FLSA regular rate of pay, for purposes of calculating overtime under the FLSA); *Bay Ridge Operating Co.*, 334 U.S. at 452, 460 (looking to the collective bargaining agreement to determine the "regular rate" for FLSA purposes); *see also O'Brien*, 350 F.3d at 294 (including CBA "contractually guaranteed shift-differential pay, longevity pay, and career-incentive . . . pay in the officers' 'regular rate' for purposes of overtime calculation under the

12

FLSA"). Because the CBAs set forth the payments that any given employee is entitled to receive (and would control exclusively those payments in the absence of the FLSA), the City must look to the CBA to determine what it would "actually pa[y] [an] employee for [his or her] normal, non-overtime workweek." *Aaron*, 54 F.3d at 655. By ignoring the CBAs in determining the regular rate of pay, the City violates the FLSA.[7] Plaintiffs, therefore, are entitled to summary judgment in their favor on this issue.

Admittedly, the FLSA provides that the "regular rate" "shall not be deemed to include" "payments made for occasional periods when no work is performed due to vacation, holiday, [and] illness," 29 U.S.C. § 207(e)(2), and the Court's conclusion requires the City to consider this type of nonwork pay (provided for under the CBAs) in calculating the regular rate of pay. Because the parties have already agreed to consider nonwork pay, however, the Court is not "deeming" nonwork pay to be included in the regular rate calculation. As the Third Circuit explained,

> The function of § 207(e)(2) is to forbid this Court from deeming that the CBA include non-work pay. We will follow that injunction, for the parties agree that the CBA already contains non-work pay in the regular rate. There is nothing for this Court to "deem." The deed is already done by the parties' own hands. Nothing in § 207(e) suggests that the Court should undo it.

*Wheeler v. Hampton Township*, 399 F.3d 238, 244 (3d Cir. 2005). Here, the CBAs likewise include nonwork pay in the regular rate, and the Court therefore has nothing to "deem."

---

[7] In so concluding, the Court does not decide whether the City has violated the CBAs. The City rightly points out that any contractual disputes regarding the CBAs are not before this Court. Reference to the CBAs, however, is nonetheless relevant to the question whether the City violated the FLSA, because the FLSA specifically requires the Court (and employers such as the City) to look to the governing employment agreement to determine the regular rate of pay under the FLSA.

The City argues that by requiring the City to look to the CBAs to determine the FLSA regular rate of pay, the Court effectively is authorizing employers to use CBAs to excuse them from paying as required by the FLSA.  In so arguing, the City misunderstands the basic purpose of the FLSA.  The FLSA establishes a *minimum* standard of care for employees.  *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) ("The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions that are detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'") (quoting 29 U.S.C. § 202(a)); *Bay Ridge*, 334 U.S. at 460 (Section 207(a) of the FLSA was intended "to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost.").  As such, "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine*, 450 U.S. at 740 (citations omitted).  The City cites other cases similarly indicating that CBAs cannot deprive employees of FLSA rights or otherwise conflict with their FLSA rights.  *See Jewell Ridge Coal corp. v. Mine Workers*, 325 U.S. 161, 167 (1945) ("employees are not to be deprived of the benefits of the Act simply because they are well paid or because they are represented by strong bargaining agents"); *Barrentine*, 450 U.S. at 740-41 (congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation") (citations omitted).

The City implies that calculating FLSA overtime with reference to the CBA provisions violates these fundamental principles.  In concluding that the City must look to the governing

employment contracts to determine the regular rate of pay under the FLSA, however, the Court has not abridged employees' FLSA rights or otherwise violated the minimum requirements set forth under the FLSA. To the contrary, the Court has expanded Plaintiffs' rights, by recognizing the rights given to Plaintiffs under the parties' wage agreements.[8] Although the FLSA without question prohibits employers from depriving employees of their FLSA rights, not surprisingly, nothing in the Act or case law prevents employers from expanding employees' rights. And, if an employer agrees to wages or benefits that exceed the requirements of the FLSA, such an agreement does not abridge an employee's FLSA rights and therefore does not violate the FLSA.[9] As one court noted,

> There is no cause of action for employers in the FLSA. . . . Once an employer agrees to pay a given amount of overtime pay, the employer may not sue to recover excess pay under the statute. The FLSA is a shield for employers, not a sword. . . . [W]hile § 207(e) protects [an employer] from having to include non-work pay in the regular rate, it does not authorize [an employer] to require such

---

[8] This is consistent with Rule 302.2 of the City's Personnel Rules, which provides that "[w]hen overtime is required for non-exempt employees, compensation must be in accordance with the Fair Labor Standards Act (FLSA) *and* any applicable collective bargaining agreement." (Emphasis added.)

[9] The fact that courts repeatedly have held that the FLSA does not authorize courts to give decisive weight to contract declarations as to the "regular rate" is not relevant to this inquiry. *See, e.g.*, *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424-25 (1945) ("Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts"). The City argues that these holdings require the Court to ignore the benefits the City has agreed to bestow upon employees in the CBAs. This line of case law, however, simply indicates that employers cannot artificially or arbitrarily define the FLSA "regular rate" in their employment contracts and expect courts blindly to adhere to the parties' contractual declarations. Or, said differently, employers cannot make a legal conclusion binding on a court as to what the statutory "regular rate" is for their employees. This line of cases, quite clearly, does not stand for the proposition that a CBA cannot expand or enlarge an employee's rights beyond those set forth in the FLSA.

> augments to be stripped out, or to take a credit for including such
> augments.

*Wheeler*, 399 F.3d at 244.  Accordingly, the City cannot use the FLSA as a sword to strip

employees of their rights secured by the CBAs by using two separate calculations of overtime

pay.

II.      Mathematical Calculation of Overtime Pay.

         A.      Proper Divisor for Calculating "Regular Rate" of Pay.

         Plaintiffs maintain that in calculating the regular rate of pay for an employee, the City

improperly divides the total remuneration by the number of hours the employee actually worked

during the workweek (rather than by 40 hours only).  Plaintiffs argue that the City's method

artificially decreases an employee's overtime premium in violation of the FLSA.  The City

contends that under the FLSA the divisor is properly the number of hours actually worked and

not a 40-hour regular workweek.  The facts are not in dispute, and the Court therefore may

decide this issue as a matter of law.

         By way of illustration, under the City's theory, if an employee makes $6.00 per hour,

with a production bonus of $9.20 during one week, and works 46 hours in a week, an employer

should multiply 46 (the number of hours actually worked) by $6.00 (the base hourly wage).  The

employer should then add the $9.20 production bonus to $276.00 (46 hours x $6.00 = $276.00),

to get a total weekly straight time salary of $285.20.  The employer should then divide $285.20

(the total weekly salary) by 46 (the total number of hours actually worked) to get a regular rate

of pay of $6.20.

         Under Plaintiffs' theory, the regular rate would be $.03 higher.  Plaintiffs maintain that

an employer should multiply the hourly wage ($6.00) by the number of non-overtime hours

16

worked in a workweek (40 hours), add the production bonus ($9.20), and divide that total by 40. This results in a regular rate of $6.23 ($6.00 per hour x 40 hours = $240.0 + 9.20 production bonus = $249.20 / 40 hours = $6.23).  Plaintiffs, however, point to no case law or other authority to support this manner of calculating the FLSA regular rate.

To the contrary, authority clearly supports the City's method of using the total hours actually worked as the divisor in calculating the regular rate.  FLSA regulations specifically provide that once all applicable remuneration for the workweek is totaled, the regular rate is calculated by dividing the total remuneration for employment by "the total number of hours actually worked by [the employee] in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.  Case law and Department of Labor opinions confirm that the regular rate is calculated by dividing the total remuneration in a work period by the total number of hours actually worked.  *Zumerling v. Devine*, 769 F.2d 745, 752 (Fed. Cir. 1985); U.S. Dep't of Labor Op. Ltr., 1988 DOLWH LEXIS 25 (Sept. 6, 1988) (rejecting union's argument that 40 hours is the divisor for computing regular rates of pay and accepting employer's computation, which included all hours worked in the week (48) rather than just the first 40 hours).  Moreover, Section 778.110(b) of the FLSA regulations provides, "If [an hourly rate] employee receives, in addition to his earnings at the hourly rate, a production bonus of $9.20, the regular hourly rate of pay is $6.20 an hour (46 hours at $6 yields $276; the addition of the $9.20 bonus makes a total of $285.20; this total divided by *46 hours* yields a rate of $6.20)."  29 C.F.R. § 778.110(b) (emphasis added); *see also id.* § 778.109 (explaining Section 778.110 and subsequent sections contain examples of how properly to calculate the regular rate under the Act).

Admittedly, the method of calculation set forth in the FLSA regulations and sanctioned by case law reduces an employee's regular rate of pay incrementally for every additional hour of

17

overtime that the employee works.  The law, however, specifically provides for such a result, *see*

*supra*,[10] and the Court is not persuaded by Plaintiffs' arguments to find otherwise.  Plaintiffs cite

an inapposite of line of cases that stand for the proposition that the regular hourly rate for a

fixed-salary employee is computed by dividing the fixed salary by the number of hours which

the salary is intended to compensate.  In *Newmark v. Triangle Aluminum Indus.*, 277 F. Supp.

480 (N.D. Ga. 1967), for example, the court determined that the appropriate divisor for an

employee with a fixed salary must be gleaned from the employment contract.  *Id.* at 482.  The

court explained that if the contract was for a definite number of hours, other than forty, then the

divisor for calculating the hourly rate would be the hours set by the contract (or the minimum

wage, if the contract rate fell below the minimum wage).  *Id.*  If the contract provided for 40

hours of work per week, then 40 hours would be the divisor.  *Id.*  And, if the plaintiff agreed to

work whatever hours were required, then the "regular rate" would be computed separately for

each individual week by dividing the salary by the hours actually worked in that week, and the

overtime would be calculated for that week on that rate.[11]  *Id.*  Likewise, in *Cowan v. Treetop*

*Enterprises, Inc.*, the court concluded that the proper divisor would be the agreed-upon hours for

the plaintiffs' work.  163 F. Supp. 2d 930, 938-41 (M.D. Tenn. 2001).  As in *Newmark*, however,

the plaintiffs were salaried (and not hourly) employees who had agreed to accept $579.00 per

---

[10] Plaintiffs argue that the regressive nature of the City's method of calculation of the regular rate violates public policy and is contrary to the intent of the FLSA.  The Supreme Court and the FLSA regulations, however, specifically contemplate this inverse relationship between the number of hours worked and the regular rate of pay.  Accordingly, the Court does not find Plaintiffs' public policy argument persuasive.  The Court is likewise unpersuaded by Plaintiffs' citation to state law cases construing state wage and labor laws.

[11] This latter instance is referred to in the FLSA regulations as a fixed salary for a fluctuating-hour workweek.  29 C.F.R. § 778.114(a)

week for 53 hours of work.  *Id.*  Accordingly, the proper divisor was 53 hours, the number of

hours for which the salary was intended to compensate.  *Id.*; *see also Dingwall v. Friedman*

*Fisher Assocs.*, 3 F. Supp. 2d 215, 221 (N.D.N.Y. 1998) (proper divisor for a salaried employee

was, based upon the parties' understanding of the agreement, 40 hours rather than whatever

hours the employee worked); *Hernandez v. 65 de Infanteria Thom McAn, Inc.*, 516 F.2d 1293,

1296 (1st Cir. 1975) (proper divisor for a salaried employee was determined by looking at the

contract to glean the number of hours for which the compensation was intended to compensate).

Unlike the plaintiffs in these cases, Plaintiffs here are hourly-wage, and not fixed-salary,

employees.  Accordingly, cases discussing the proper divisor for salaried employees are not

controlling.

Plaintiffs' argument regarding the fluctuating workweek exception in the FLSA is

likewise inapposite.  According to Plaintiffs, the City improperly justifies its use of a fluctuating

divisor based upon the FLSA's fluctuating workweek exception contained in Section

778.114(a).[12]  Section 778.114(a) provides in relevant part that if, among other things, an

"employee employed on a salary basis [has] hours of work which fluctuate from week to week

and the salary [is] paid him pursuant to an understanding with his employer that he will receive

such fixed amount as straight time pay for whatever hours he is called upon to work in a

workweek, whether few or many," then the "regular rate of the employee will vary from week to

week" and will be "determined by dividing the number of hours worked in the workweek into

the amount of the salary to obtain the applicable hourly rate for the week."  29 C.F.R. §

---

[12] Although Plaintiffs represent that the City so argues, the City does not appear to claim
in its motion for summary judgment briefing that the fluctuating workweek exception justifies its
use of a divisor equivalent to the number of hours actually worked.

778.114(a).  Courts have explained that in applying this exception the parties must look to the employment contract to determine the number of hours the salary is intended to compensate.  *Cf. Newmark*, 277 F. Supp. at 482.  "By its own terms, Section 114 applies only if there is a 'clear mutual understanding of the parties that the fixed salary is compensation for however many hours the employee may work in a particular week, rather than for a fixed number of hours per week."  *Valerio v. Putnam Assocs.*, 173 F.3d 35, 39 (1st Cir. 1999) (quoting 29 C.F.R. § 778.114(a)).

Plaintiffs argue that the fluctuating workweek exception is inapplicable here, and that the Court should instead apply the standard set forth in Section 778.113 for salaried employees. Plaintiffs contend that as between Section 114, which covers employees hired at a fixed salary for whatever hours they may work, and Section 113, which covers employees hired at a fixed salary for a fixed number of hours per week, this case more closely resembles the latter. Plaintiffs maintain that the fixed number of hours is 40 hours per week, which most of the CBAs recognize as the normal workweek.

Plaintiffs attempt to box the City into selecting one of two equally inapplicable methods of calculating the regular rate.  Plaintiffs' framework, however, is inappropriate.  Neither Section 113 nor Section 114 applies, because both sections explicitly apply only to salaried employees. The Court need not attempt to fit the hourly-wage Plaintiffs into this faulty construct, particularly because FLSA regulations expressly establish the proper method for calculating the regular rate of pay for *hourly-wage* employees.  Section 778.110 addresses the manner for calculating the wage of an hourly-rate employee who is employed solely on the basis of a single hourly rate, 29 C.F.R. § 778.110(a), and the manner for calculating the wage of an hourly-rate employee who is employed on the basis of an hourly rate and a bonus system, *id.* § 778.110(b).

20

Section 778.110(b) establishes that the City's method of using the total number of hours worked as the divisor in calculating the regular rate of pay is proper. *See supra*. Moreover, Section 778.109 provides that to calculate the regular rate of pay, an employer must use as the divisor the total number of hours "actually worked" in that workweek for which the compensation was paid. 29 C.F.R. § 778.109. Accordingly, the Court concludes that the City properly divides the total remuneration by the total number of hours actually worked (instead of by only the first 40 hours worked). The City therefore is entitled to summary judgment in its favor on this issue.

      B.     <u>Proper Method for Calculating Overtime Pay</u>.

           1.     <u>Multiplier</u>.

Plaintiffs also contend that the City improperly uses the fluctuating workweek exception to justify its payment of overtime hours at one-half the regular rate instead of one and one-half times the regular rate. Plaintiffs argue that the City cannot meet the requirements of the fluctuating workweek exception found in Section 114(a). Indeed, Plaintiffs explicitly (and correctly) recognize that there is "no established annual or monthly salary" for "the City's hourly employees," (a concession, however, that does not prevent Plaintiffs from attempting to avail themselves of the regulations governing salaried employees and ignore the regulations governing hourly-wage employees, *see supra* § II.A).

Even though Plaintiffs are correct that Section 114's exception is inapplicable, Plaintiffs' argument that the City may never use a one-half multiplier for hourly-rate employees nonetheless must fail. According to the City, Plaintiffs argue that in calculating the overtime pay for an employee who makes straight time pay of $736.35 for 48 hours of work per week (48 hours x $15.00 per hour = $720.00 + bonus of $16.35 = $736.35), with a regular rate of pay of $15.34 ($736.35 / 48 = $15.34), an employer must add to the total straight time pay ($736.35)

the overtime pay of $184.08, for a total pay of $920.43.[13]  According to Plaintiffs, the overtime

pay of $184.08 should be obtained by multiplying the regular rate of pay ($15.34) by one and

one-half to get the overtime rate of pay of $23.01, and multiplying the overtime rate of $23.01

by the hours beyond 40 (eight hours).  This method of calculation, however, *both* (a) pays

employees two times for the straight time pay on the eight hours beyond 40, *and* (b) pays

employees two times for the proportion of the bonus pay attributable to the overtime hours.

Specifically, because the calculation includes multiplying 48 hours by the base rate and adding

the bonus, employees would be paid once for the eight hours beyond 40 at the base rate of

$15.00 per hour (48 hours x $15.00 base rate + $16.35 bonus = $736.35; $120.00 of the $736.35

in straight time pay accounts for eight hours of work at the base rate of $15.00 per hour), and a

second time when the employer calculated the overtime pay of $184.08 on the eight overtime

hours (1.5 x the regular rate of $15.34 x 8 overtime hours = $184.08; $120.00 of the $184.08 in

overtime pay accounts for eight hours of work at the base rate of $15.00 per hour).  Because the

initial calculation based upon 48 hours already paid the eight overtime hours at straight time,

---

[13] Although the City contends that this is Plaintiffs' argument, it is unclear whether Plaintiffs actually argue that the straight time pay for hours beyond 40 should be compensated twice.  At page seventeen of the City's opening summary judgment memorandum [Doc. 232], the City represents that Plaintiffs are asking the Court to order the City to pay $736.35--straight time pay on 48 hours, *i.e.*, the 40 regular hours plus the eight hours beyond 40--plus overtime pay of $184.08, *i.e.*, straight time pay on eight hours plus an overtime premium on eight hours. In explaining Plaintiffs' request, the City's memorandum incorrectly calculates the sum of $736.35 and $184.08 as $800.43, when that sum actually is $920.43.  Plaintiffs do not dispute the City's characterization of Plaintiffs' requested relief.  The evidence attached to the summary judgment briefing, however, does not necessarily establish that Plaintiffs seek double straight time pay on their overtime hours, *i.e.*, $920.43 in pay.  *See* Exhs. 1B, 1C to Hollyfield's Dep. at 13-16, attached to Def's Opening Summ. J. Mem.  Rather, the evidence tends to indicate that Plaintiffs seek only $800.43, *id.*, which is the number the City incorrectly represents as the total of the sum of $736.35 and $184.08.  Although the record is unclear, because the issue has been raised, and was not disputed by Plaintiffs, the Court will assume that the City properly characterizes the relief requested by Plaintiffs.

calculating overtime at one and one-half times the regular rate pays the employee straight time on the eight hours of overtime twice.[14]

If an employer were correctly to calculate overtime at the rate of one and one-half times the regular rate of pay for an employee who makes $736.35 for 48 hours of straight time pay, the employer would (a) multiply the regular rate of pay of $15.34 by one-half (and not one and one-half) for a total half time premium pay of $7.67, (b) multiply the half time premium pay of $7.67 by the overtime hours of eight, for a total of $61.36 in premium pay on eight hours (the overtime premium only, and not the total overtime pay, because the overtime straight pay already has been accounted for in the $736.35 total straight time pay), and (c) add the half-time rate for eight hours (overtime premium pay of $61.36) to the total straight time rate for 48 hours of work ($736.35), for a total pay (straight time pay plus overtime premium pay) of $797.71.  This method properly results in overtime pay at a rate of one and one-half times the regular rate.

This method of calculating overtime pay, using a one-half multiplier (and not a one and one-half multiplier), is explicitly recognized and sanctioned by the FLSA regulations governing calculation of overtime for hourly-wage employees.  Section 778.110(b), which expressly applies to hourly rate employees (and is distinct from the fluctuating workweek exception contained in Section 778.114(a) that applies only to salaried employees), provides that if an employee receives a total straight time pay of $285.20 ($6.00 per hour x 46 hours = $276.00 + $9.20 production bonus = $285.20) for 46 hours of work, that the regular rate of pay would be $6.20 per hour, and that the total pay would be calculated by (a) multiplying the regular rate of pay ($6.20) by the total hours worked (46) for a total straight time pay of $285.20; (b) adding to

---

[14] This method also results in double paying the portion of the bonus attributable to overtime hours, *i.e.*, $2.72.  *See infra* § II.B.2.

that total the overtime premium on six hours beyond 40 at *one-half* the regular rate ($6.20

regular rate x .5 x 6 overtime hours = $18.60); to (c) obtain a total pay of $303.80 ($285.20 +

$18.60 = $303.80).  *See* 29 C.F.R. § 778.110(b).

That same regulation, however, provides an alternative method of calculating the total

pay for an hourly-wage employee receiving a fixed bonus, which yields the same result, even

though the alternative method uses a one and one-half multiplier, instead of a one-half

multiplier.  If the employer used a one and one-half multiplier instead of a one-half multiplier, to

avoid paying double straight time pay on the six hours beyond 40, the employer would have to

(a) calculate the regular pay on a *40-hour* workweek (and not 46 hours) at the regular rate of

$6.20, for a total pay for the first 40 hours of work of $248.00 ($6.20 x 40 = $248.00); (b) add

the straight time pay and premium pay on the additional six hours beyond 40 to get the total

overtime pay (not overtime premium), which would be determined by multiplying the regular

rate of pay of $6.20 by one and one-half, and multiplying that number by six, the number of

hours worked beyond 40 ($6.20 regular rate x 1.5 x 6 overtime hours = $55.80 in overtime pay);

for (c) a total pay of $303.80 (regular pay of $248.00 for 40 hours of work + overtime pay of

$55.80 for 6 hours of work beyond 40 at time and one half = the total pay of $303.80).

Either of these two methods is an acceptable method of calculating FLSA overtime pay

and both yield the same result of paying an employee at time and one-half the regular rate for the

six overtime hours worked beyond the first 40 hours.  The first method involves determining the

total straight time pay on 46 hours and using a one-half multiplier to determine the additional

half time premium due under the FLSA on the last six overtime hours, while the second involves

determining the regular pay on a 40-hour workweek (and not the total straight time pay on a 46-

hour workweek), and using a one and one-half multiplier to determine the total overtime pay

24

(straight time *and* overtime premium pay) on the last six hours.  Accordingly, to the extent

Plaintiffs argue that the City must always utilize a one and one-half multiplier to achieve an

overtime payment equal to one and one-half times the regular rate, Plaintiffs are incorrect, and

the City is entitled to summary judgment in its favor.

        2.    <u>Proper Distribution of Bonus Pay</u>.

      Plaintiffs' same method of calculation, as described above, *see supra* § II.B.1, also pays

employees two times for the proportion of their bonus pay attributable to the overtime hours.

Returning to a previous example, Plaintiffs seek to include the entire bonus of $16.35 in the

straight time pay (48 hours x $15.00 per hour + bonus of $16.35 = total straight time pay on 48

hours of $736.35), and to add to that total straight time pay on 48 hours, the overtime calculated

by multiplying the proper multiplier (one-half in this example) by the regular rate of pay ($15.34

per hour).  Or, said differently, using a 40-hour regular week instead of a 48-hour week,

Plaintiffs seek to determine the pay for the regular, 40-hour workweek by multiplying the

standard hourly rate of $15.00 (and not the regular rate of $15.34) by 40, and adding the entire

$16.35 bonus to the first 40 hours of work (and not distributing it among the 48 hours actually

worked), for a total regular pay for the first 40 hours of $616.35.  Plaintiffs then propose adding

$184.08, the overtime pay--not premium--on the eight hours beyond the first 40 worked, which

they derive by multiplying the regular rate of $15.34 by one and one-half and by the number of

overtime hours (eight).  The sum of these numbers is $800.43, or $2.72 higher than the $797.71

the City yields by its method of calculation.

      Because, under Plaintiffs' calculation, the regular rate of pay is based not only upon the

hourly pay of $15.00 but also the *entire* fixed bonus of $16.35 per week (hence, the extra $.34

per hour added to the base hourly rate of $15.00), Plaintiffs double count the portion of the

bonus attributable to the hours worked beyond 40.  Specifically, Plaintiffs seek to add the entire

bonus of $16.35 to the base salary of $600.00, and then calculate overtime on the hours beyond

40 (in this example eight hours) using the regular rate of $15.34, when $.34 of that regular rate

represents the hourly bonus (which was already *wholly* accounted for in the base salary for the

first 40 hours).  Accordingly, in this example, the Plaintiffs end up receiving an additional $2.72

(8 overtime hours x $.34 per hour bonus = $2.72) for the workweek.

Plaintiffs argue that their method of calculating the bonus is proper because FLSA

regulations do not require a bonus to be attributed to hours actually worked beyond 40.  Rather,

because the bonus is fixed and remains the same regardless of whether an employee works 40

hours or 48 hours, the bonus should not be reduced proportionally for each extra hour beyond 40

worked.

Plaintiffs are correct that, under the method approved by the FLSA regulations and

adopted by the City, the regular rate of pay in an overtime week will always be less than the base

rate of pay (hourly wage) plus any nondiscretionary bonuses.  Accordingly, the City will always

pay less for the first 40 hours of an overtime week than it does for the same hours in a

nonovertime week.  The FLSA regulations, however, specifically contemplate this type of

inverse relationship between hours worked and pay received.  Section 778.209 explicitly

provides,

> Where a bonus payment is considered a part of the regular rate at
> which an employee is employed, it must be included in computing
> his regular hourly rate of pay and overtime compensation.  No
> difficulty arises in computing overtime compensation if the bonus
> covers only one weekly pay period.  The amount of the bonus is
> merely added to the other earnings of the employee . . . and the
> total divided by *total hours worked.*

29 C.F.R. § 778.209(a) (emphasis added).  Accordingly, the FLSA requires the City to allocate

the bonus across the total hours an employee actually works, even if such allocation results in an inverse relationship between hours worked and pay.[15]

Section 778.110 of the FLSA regulations also instructs parties to adopt a method of calculation that distributes bonus pay across hours actually worked (and not simply 40 hours), even though the bonus is fixed and would be the same if the employee worked a regular 40-hour week.  Section 110(b) provides that an employer should calculate overtime by multiplying the regular rate of pay of $6.20 by 40 hours to obtain $248.00 of straight time pay on a regular 40-hour week.  By using the regular rate of pay, instead of the base rate of pay plus bonus (which, as endorsed by Plaintiffs, would total $249.20--base pay of $6.00 per hour x 40 hours per week + entire $9.20 bonus = $249.20--instead of $248.00), Section 778.110 applies only the prorated amount of the bonus to the first 40 hours, reserving the remainder of the bonus for the six overtime hours.  Plaintiffs' method of calculation, therefore, is inconsistent with Section 778.110.

If Plaintiffs did not allocate any of the bonus to the overtime pay, they might avoid the problem of double counting the portion of the bonus attributable to the overtime hours. Plaintiffs, however, calculate overtime pay by using the regular rate of pay, which by definition

---

[15] Plaintiffs argue that allocating a bonus across all hours worked to create a varying regular rate of pay is also improper because the FLSA "regular rate" by definition must be "regular."  This argument, however, fails to account for the fact that FLSA regulations specifically instruct parties to reach such a result for hourly-wage employees like Plaintiffs.  *See* 29 C.F.R. § 778.209(a); *id.* § 778.110(b).  Moreover, although not actually applicable to this case, the FLSA fluctuating workweek exception also specifically contemplates an irregular "regular rate," and therefore also negates Plaintiffs' argument.  *Id.* §778.114(a) (providing for a fluctuating regular rate for certain salaried employees); *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 (1942) (endorsing the fluctuating workweek exception applicable to salaried employees even though this method of calculating overtime would cause the regular rate to decrease as the number of hours worked in a week increase).

27

is comprised of a prorated portion of the bonus pay.  Returning to the example contained in Section 778.110, once determining that the regular pay for 40 hours is $248.00, the employer must add to the regular pay the time and one-half pay of $55.80 (overtime pay, and not overtime premium pay) on the extra six hours of work beyond 40 ($6.20 regular rate x 1.5 x 6 hours of work beyond 40 = $55.80), for a total pay of $303.80 ($248.00 + $55.80 = $303.80).

Although under Plaintiffs' method, an employer already has accounted for the entire $9.20 bonus in its calculation of regular pay ($6.00 per hour base pay x 40 hours + $9.20 = $249.20), Plaintiffs nonetheless assert that the overtime pay should be calculated based upon the regular rate of pay.  Because $.20 of the regular rate of pay, however, represents the prorated hourly bonus ($9.20 / 46 hours = $.20) on the base hourly pay of $6.00 per hour, using the $6.20 regular rate of pay to calculate overtime pay results in double counting $.20 of the bonus for six hours, or, said differently, paying $1.20 twice ($.20 x 6 overtime hours = $1.20).  Because of this double counting, Plaintiffs' method of calculation yields a total payment that is $1.20 greater than that sanctioned by Section 778.110.  Specifically, under Plaintiffs' method, the initial regular pay for 40 hours would be $249.20 ($6.00 per hour x 40 hours per week + $9.20 bonus = $249.20), and the overtime pay would be $55.80 ($6.20 regular rate x 1.5 x 6 hours of work beyond 40 = $55.80).  The total of these two sums is $305.00 ($249.20 + $55.80 = $305.00), which is $1.20 higher than total of $303.80 set forth in Section 778.110(b).  Plaintiffs' method, therefore, is inconsistent with FLSA regulations.

The proper method to calculate a bonus is to attribute it to the total number of hours actually worked.  *See* 29 C.F.R. § 778.209(a).  Moreover, the FLSA does not require employers to double count the portion of a fixed bonus attributable to hours worked beyond 40.  *Id.* § 778.110.  This is true regardless of the fact that this method of calculation decreases the amount

of the bonus per hour proportionally to each hour worked beyond 40.  The FLSA regulations clearly contemplate such an inverse relationship.  Accordingly, the City is entitled to summary judgment in its favor on this issue.

III.     Proper Inclusion of Nondiscretionary Bonuses.

In computing FLSA overtime premiums, the first step is to determine the employee's "regular rate."  As described herein, "the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee."  29 U.S.C. § 207(c); *supra* § I.  "Where a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation."  29 C.F.R. § 778.209(a).  The City concedes that shift differential pay, longevity pay, superlongevity pay, bilingual pay, educational pay, and firearms qualifications are all "bonuses" subject to inclusion in the regular rate for purposes of the FLSA.

A.     Regularly-Paid, Non-Discretionary Bonuses and Add-Ons.

The parties maintain that they have pointed to undisputed facts that demonstrate that they are entitled to judgment as a matter of law in their favor on the question whether the City properly includes regularly-paid, nondiscretionary bonuses and other add-ons in calculating the regular rate of pay under the FLSA.  The City's only evidence on this issue is the testimony of Janet Hollyfield, a 25-year veteran with the City, who was employed as Assistant Accounting Officer by the City, and the testimony of its expert Lloyd Hill.  Ms. Hollyfield testified that the time and one-half rate constitutes time and one-half of "the employee's hourly rate plus any nondiscretionary additional pays."  Ms. Hollyfield also testified that nondiscretionary bonuses "as covered by FLSA include items that do not vary based on the number of hours that an employee works and are payments that the employee and the employer agree that the employee

will receive. . . .  Some of these include longevity, super longevity, there are some academic incentives, bilingual pay."  Mr. Hill testified that the FLSA requires the City to "total up total remunerations and divide it by hours worked and come up with a regular rate and pay additional halftime for the overtime hours on that regular rate total remunerations divided by hours worked," and that incentives are "part of the remunerations, so they would be part of the regular rates."  In response to the question, "Are the incentives par of the hourly rate," Mr. Hill responded, "I presume they are.  I mean, if you are just paid on--I presume they are, but I don't want to--and there may be more incentives than I know about."  Mr. Hill further testified that in the examples he has seen of the City's pay plan, the City is paying correctly.  Mr. Hill then described the things that could be "additives" to the base rate of pay, which could include longevity pay or a shift differential.

Although Plaintiffs argue that the City does not pay the proper add-ons to the base rate, Plaintiffs cite no admissible evidence to support their claim.  Rather, Plaintiffs only point to various paystubs attached to their memorandum, without any accompanying authenticating affidavit, and claim that these paystubs create an issue of disputed fact that precludes summary judgment on the question whether the City considers required additional compensation.

"Unauthenticated documents, once challenged, cannot be considered by a court in determining a summary judgment motion.  In order for documents not yet part of the court record to be considered by a court in support of or in opposition to a summary judgment motion they must meet a two-prong test:  (1) the document must be attached to and authenticated by an affidavit which conforms to rule 56(e); and (2) the affiant must be a competent witness through whom the document can be received into evidence."  *In re Harris*, 209 B.R. 990, 996 (10th Cir. 1997) (quoting 11 James Wm. Moore, *et al.*, Moore's Federal Practice §§ 56.10[4][c][I],

56.14[2][c] (3d ed. 1997)); *see also* 10A Wright & Miller, Federal Practice & Procedure § 2722 (3d ed. 1998) ("To be admissible, documents must be attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."). "'Documentary evidence for which a proper foundation has not been laid cannot support a summary judgment motion, even if the documents in question are highly probative of a central and essential issue in the case.'" *Harris*, 209 B.R. at 996 (quoting Moore, *supra*).

The City objects to the Court's consideration of the paystubs attached by Plaintiffs on the ground that they are unauthenticated and incomplete and therefore inadmissible. Plaintiffs do not argue that the documents are admissible or otherwise attempt to authenticate them, but rather claim that the paystubs "were intended not as admissible evidence, but as examples of some of the pay concerns raised by the City's payment of pay enhancements, benefits, and bonuses and failures to include them in the 'regular rate' calculations." Because the City has objected to these documents, the Court must decline to consider them, despite the fact that they may be probative of a central issue in this case. The additional evidence pointed to by Plaintiffs is also insufficient.

The Court cannot conclude as a matter of law on the record before it that either party is entitled to judgment in their favor on the question whether the City properly includes the necessary add-ons in their calculation of the regular rate of pay under the FLSA. The Plaintiffs present no admissible or relevant evidence, and the City's evidence simply does not provide the Court with any underlying facts from which the Court could conclude that the City properly considers regularly paid non-discretionary bonuses and other pay enhancements. Ms. Hollyfield and Mr. Hill merely describe the types of add-ons that must be included in determining an

employee's total remunerations for FLSA purposes.  Mr. Hill opines that the City was paying

properly under the FLSA, but provides the Court with no underlying factual support for his

conclusion.  Moreover, Mr. Hill's and Ms. Hollyfield's ultimate legal conclusions regarding the

City's compliance with FLSA requirements are not proper evidence.  When, at the August 2,

2007, status conference, the Court inquired about the gaps in the evidence and gave the parties

an opportunity to point to any additional relevant evidence, the parties were unable to do so.

Because sufficient facts are not before the Court to allow it to decide the issue whether the City

properly augments its employees' total remuneration by including regularly-paid bonuses and

other regularly-paid add-ons, the Court denies both parties' motions for summary judgment on

this issue.

      B.    <u>One-Time Mayoral Bonus</u>.

      The parties also dispute whether the City properly excluded a one-time Mayoral bonus

paid to employees in the Fall of 2003.  Mayor Martin Chavez issued a memorandum to the

President of the Albuquerque City Council explaining the purpose of the bonus:

> There are two main ways an employer, whether public or private,
> can reward employees for good work.  One is a pay raise, the other
> a bonus.  The money that pays for them can dictate which method
> is most practical and prudent, depending on its source or nature. . .
> .  [T]he responsible way to reward employee sacrifices during the
> last three years is through a bonus plan.  Unfortunately, at the
> present time, the City financial staff does not see sufficient
> recurring revenue to support a permanent raise, but have identified
> sufficient nonrecurring funds to support a bonus plan.

The City's explanation, carried over into the Memorandum of Understanding signed by the

unions and the City, further explains the rationale for the program:

> To recognize and reward those eligible employees who have made
> the commitment to stay with the City despite the fiscal challenges
> over the last three fiscal years, they will receive a single net bonus

32

> of $250 per year for a maximum of three years ($750). Because of
> significant downsizing and hiring freezes, many employees have
> had to assume additional duties and responsibilities without
> reducing service levels or responsiveness to resident's needs. In
> addition, many employees have received no adjustment in pay
> during the period and promotional opportunities have been limited.

This Mayoral bonus was paid only one time. Because the parties do not dispute the facts, the

Court may decide whether the City should have included this bonus in determining Plaintiffs'

regular rate of pay as a matter of law.

The FLSA specifically provides that discretionary bonuses are properly excluded from an

employee's regular rate of pay. 29 U.S.C. § 207(e)(3). A bonus is discretionary if the employer

retains discretion both as to the fact of the payment and the amount of the payment. *Id.*

Specifically, sums paid in recognition of services performed during a given period are not

included if "both the fact that payment is to be made and the amount of the payment are

determined at the sole discretion of the employer at or near the end of the period and not

pursuant to any prior contract, agreement, or promise causing the employee to expect such

payments regularly." *Id.*; *see also* 29 C.F.R. § 778.211(c). The City argues that the Mayoral

bonus was purely discretionary, "as it was a one-time payment, made at the behest of the mayor,

at his discretion, for unusual, unexpected and non-recurring reasons." Plaintiffs claim that the

bonus was in lieu of a wage increase, and the fact that it was a flat-rate, across-the-board bonus

supports the nondiscretionary nature of the bonus.

The Mayoral bonus meets the definition of a discretionary payment within the meaning

of Section 207(e)(3). Although the bonus was flat-rate and across-the-board, neither of those

facts transforms the bonus into a nondiscretionary payment. Rather, the bonus meets both of the

requirements of Section 207(e)(3). First, the fact that the payment was made and the amount of

the payment were determined at the sole discretion of the Mayor at or near the end of the period

for which the bonus was intended to compensate.  The Mayor's memorandum indicates that the

bonus was intended to compensate past employment of the City employees and was not a

promise of compensation for future employment.  The Mayor explained that "the responsible

way to reward employee sacrifices during the last three years is through a bonus plan."  *Cf. id.* §

778.211(b).  In the Memorandum of Understanding, the City noted that the bonus was to

"recognize and reward those eligible employees who have made the commitment to stay with the

City despite the fiscal challenges over the last three fiscal years," and that the bonus was to

compensate employees who "have had to assume additional duties and responsibilities without

reducing service levels" "because of significant downsizing and hiring freezes."  Second, the fact

of the payment and the amount of the payment were not made pursuant to any prior contract,

agreement, or promise causing the employee to expect such payments regularly.  There is no

evidence in the record before the Court that the City was under any obligation to give this bonus,

and indeed, the Memorandum of Understanding specifically indicates that although future

payments (for two additional years) might be possible, they were not in any way mandatory.

Accordingly, the bonus was discretionary within the meaning of Section 207(e)(3), and the City

is entitled to summary judgment in its favor on this issue.

IV.     Proper Credits.

        Section 207(h)(2) of the FLSA provides that certain contractual overtime premium

payments are creditable towards deficiencies in FLSA overtime payments.  29 U.S.C. §

207(h)(2).  Specifically, Section 207(h)(2) provides that "[e]xtra compensation paid as described

in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime

compensation payable pursuant to this section."  *Id.*  Paragraphs five, six, and seven of Section

(e) identify the following types of compensation for which employers may take credit pursuant to Section 207(h)(2):

> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;

> (6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days; or

> (7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employee contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a)[]) of this section, where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

29 U.S.C. § 207(e)(5), (6), & (7).  If an employer pays an employee one of these types of premium wages, that premium amount may be counted against any overtime premium that might be owed to the employee under the FLSA.  *See id.* § 207(h)(2).  For example, if an employer pays an employee a contractual premium of $5.00 for time worked on a Saturday (a premium payment above and beyond the straight time payment that is not required by the FLSA) that is not less than one and one-half times the regular rate, and in the same period owes the employee $15.00 in FLSA overtime for hours worked in excess of 40, the employer may credit the $5.00 premium against the $15.00 FLSA liability and pay the employee $10.00.

Plaintiffs contend that the City "incorrectly and impermissibly take[s] 'credits' or 'offsets' against overtime pay," and that "[t]hese 'credits' are ostensibly for vacation time, sick time, and holidays that the City pays at regular, non-overtime pay rates, pursuant to its collective bargaining agreements."  The City argues that it properly takes credits only for pay falling squarely within the definitions contained in Section 207(e)(5), (6), and (7).

The parties, however, present no evidence in support of their motions that would allow the Court to rule in their favor on this issue.  In their supporting memoranda, Defendants cite only to the same deposition testimony of Ms. Hollyfield and Mr. Hill that they cited in support of their argument that they properly consider all regularly-paid nondiscretionary bonuses and add-ons.  *See supra* § III.A.  This testimony is not sufficiently specific to allow the Court to determine as a matter of law that the City properly takes credits against its FLSA overtime liabilities.  To the contrary, the testimony is only composed of general statements regarding the manner in which the FLSA requires employees to be paid, as well as improper legal conclusions about the City's ultimate compliance with the FLSA.  The City provides the Court with no underlying facts from which the Court could determine that the City is properly crediting its overtime liabilities.  Plaintiffs, likewise, fail to provide the Court with any facts from which the Court could conclude that the City is improperly offsetting payments against its FLSA overtime liabilities.  Rather, Plaintiffs present only legal argument upon which the Court cannot grant summary judgment.[16]  Accordingly, the Court denies the parties' cross-motions for summary judgment on this issue.

---

[16] The Court gave the parties the opportunity to point to any facts that would allow the Court to decide the question whether the City properly credits its overtime liabilities at the August 2, 2007, status conference.  The parties were unable to identify any admissible evidence relevant to this question.

V.     <u>Exempt Employees</u>.

Plaintiffs move for summary judgment on the question of exempt employees.  The City does not move for summary judgment on this question, because "[a]lthough the City maintains that Plaintiff Chavez [is] exempt from the minimum wage and overtime requirements of the [FLSA], . . . [n]o discovery has been done on any exempt status issue."  Def's Opening Summ. J. Mem. at 2 n.1.

Exemptions to the FLSA are narrowly construed against the employer, *see Avery v. City of Talladega*, 24 F.3d 1337, 1340 (11th Cir. 1994), and the City has the burden of proving that each of its exemptions from FLSA requirements is appropriate, *Dep't of Labor v. City of Sapulpa*, 30 F.3d 1285, 1287 (10th Cir. 1994); *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974).  The employer's burden of proof must be met by clear and affirmative evidence. *Donovan v. United Video, Inc.*, 725 F.2d 577, 581 (10th Cir. 1984) ("An employer must prove that an employee is exempt from the FLSA by 'clear and affirmative' evidence.").  The City therefore must show that the Fire Department lieutenants and captains it claims are exempt fit "plainly and unmistakably" within the "bona fide executive" exemption.  *Bennet v. City of Albuquerque*, No. 94-2094, 1995 U.S. App. LEXIS 8901, at *6 (10th Cir. Apr. 18, 1995); *Aaron v. City of Wichita*, 54 F.3d at 657.

Plaintiffs argue that the City has arbitrarily deemed a class of Fire Department regular and paramedic lieutenants and captains exempt from the FLSA, and that because the City has the burden of proving the propriety of any exemptions at trial, it is required to make a showing of the reasons it considers the employees exempt.  In response, the City argues that the question of exempt status is not before the Court and that, even if it is, Plaintiffs have waived that issue.

The City first argues that by agreement of counsel, this case has "proceeded exclusively

on the issue of the calculation of overtime due non-exempt employees."  The City claims that

this agreement was "repeatedly referred to in discovery requests and responses," but points to no

portions of the discovery requests and responses referring to any such agreement.  In contrast,

Plaintiffs point to several references where defense counsel concede that exempt status is an

issue in this case.  For example, on February 26, 2004, the City's counsel advised the Court that

"an issue has developed throughout the proceeding, as to whether a group of plaintiffs within the

Fire Department and perhaps other city departments . . . are exempt or non-exempt from FLSA

requirements based on their job classifications and duties.  Further discovery . . . is needed on

that issue."  On March 22, 2004, at a hearing before Magistrate Judge Torgerson, one of the

City's attorneys informed the Court that "[a] sub-issue that has kind of evolved in the

proceedings is whether fire lieutenants, captains and others of similar rank are exempt or

nonexempt from the requirement of the FLSA."  On September 7, 2005, the parties discussed the

discovery that remained outstanding and the expert witnesses that would be needed on the

subject of exempt employees.  The Court asked, "Well, . . . isn't the exempt or non-exempt

status an issue in this lawsuit," and defense counsel responded, "It is certainly an issue in this

lawsuit."  Indeed, in its first answer to the complaint in this case (as well as in the subsequent

answers to the amended complaints) the City maintained that the named Plaintiff who filed this

lawsuit, Patrick Chavez, was exempt.  Thereafter, on November 22, 2005 [Doc. 145], and July

24, 2006 [Doc. 187], the City admitted that the issue of exemption applies to certain Fire

Department employees.  *See infra* at 39-40.  The Court therefore is not persuaded on the

evidence before it that the parties agreed to remove exempt status as an issue from this case.

      The City next argues that exempt status is not before the Court because the City's

"agreement on the sending of notice to prospective opt-in plaintiffs was contingent on the

addition of non-exempt employees who would be similarly situated to non-exempt employees relative to the calculation of overtime." This argument does not have merit. The record indicates that the City did not condition its agreement on the sending of notice upon the removal of exempt status as an issue in this case. Rather, the City simply conditioned its approval on the *addition* of non-exempt employees to this case, *i.e.*, an amendment to the complaint to name one or more individuals as representatives who are not subject to the affirmative defense of exempt status under Section 213(a)(1) of the FLSA. The City entered into this conditional agreement because it was concerned that Patrick Chavez, who the City maintained was subject to the affirmative defense of exempt status, was not sufficiently representative of the class, and it wished for Plaintiffs to add as class representatives persons not subject to that affirmative defense. Because the City's agreement in no way limited the issues before the Court, the City's agreement has no bearing on the question whether the parties reached an agreement to remove exempt status as an issue from this case.

The City further argues that the question of exempt status is not before the Court because the Court denied the minority Plaintiffs' motion to amend the complaint to add a claim that the City improperly classified certain employees as exempt.[17] In its April 26, 2006, order deciding the motion to amend, the Court explained that the prior complaints contained no allegation that the City had engaged in such misclassification but rather asserted that the City had improperly calculated Plaintiffs' overtime under the FLSA. The Court therefore concluded that the motion to add another claim was untimely.

Although the Court's order denied Plaintiffs the right to add a claim that the City

---

[17] This was not the amendment upon which the City based its conditional approval of the class notification, but rather a subsequent amendment, but rather a subsequent amendment.

improperly classified its employees, the order did not remove the question of exempt status as a defense from this case.  Patrick Chavez, and approximately 100 other plaintiffs, allegedly are subject to the affirmative defense of exempt status.  The City has recognized, from the beginning of this litigation, that exempt status is an affirmative defense, and the City has plead it as such in each of its answers to the complaint and amended complaints.  The City also has recognized this affirmative defense in other pleadings, including its response asserting its conditional approval of the sending of notice to prospective opt-in plaintiffs [Doc. 91], in which the City maintains that Chavez is exempt, along with 71 other plaintiffs, and that the City would like to add additional plaintiffs, including class representatives, that are not subject to the defense.  Moreover, in its response to the minority Plaintiffs' motion to add the claim for misclassification, the City concedes that the exempt status issues of the Fire Department paramedic lieutenants have been raised in this case.  *See* Resp. to Mot. to Amend. Compl. at 5 [Doc. 145] ("Exempt status issues beyond the fire department paramedic lieutenants--a single category--have never been raised in this case.").  In addition, in its response to the minority Plaintiffs' Second Motion to Compel Answers to Interrogatories and Memorandum in Support [Doc. 187], which it filed after the Court's April 26, 2006, order, the City stated, "Defendant has repeatedly explained to [minority plaintiffs' counsel] that the only exempt employees involved in this matter are those in the position of Fire Command.  The limited scope of this case was by court order."

Plaintiffs were under no obligation to plead an affirmative claim against the City for misclassifying its employees as exempt.  Exempt status is an affirmative defense, and it is the City's burden to demonstrate that any Plaintiffs meet the requirements of the exemption.  The minority plaintiffs nonetheless moved for an amendment seeking to add an affirmative claim for

relief, and the Court denied that aspect of the motion because it was untimely.  The Court's decision, however, was limited solely to the question whether to allow the addition of the minority Plaintiffs' claim for relief.  In denying the request to add a new claim, the Court in no way removed the question of exempt status as an affirmative defense from this case.

The City is essentially asking the Court to conclude, based upon a three-page order deciding the minority Plaintiffs' non-dispositive motion to amend the complaint, that approximately 100 Plaintiffs (the vast majority of whom are part of the majority--and not minority--class, and who therefore did not bring the motion to amend) have no claims for relief in this case, when it was never the burden of these Plaintiffs in the first place to demonstrate that they are not exempt.  If the City believed, however unreasonably, that the Court's order effectively barred the claims of these plaintiffs, the City should have moved for an order dismissing these Plaintiffs from the case.  The City, however, neither moved for dismissal nor sought summary judgment against these Plaintiffs.  To the contrary, the City excluded the issue of exempt status from its motion for summary judgment, stating in a footnote in its opening brief that "[a]lthough the City maintains that Plaintiff Chavez was exempt from the minimum wage and overtime requirements of the Act under Section 13(a)(1) of the Act, the City brings this motion for summary judgment only as to the regular rate issue."  The City did not argue that Chavez and the other allegedly exempt employees had no claims in this case because the question of exempt status was not before the Court, or otherwise seek any relief from the Court regarding the question of exempt status.  The City only indicated in one sentence that no discovery had been done on any exempt status issue, and thereafter simply cited the Court's April 26, 2006, order.

Accordingly, the Court declines to effectively dismiss these Plaintiffs from the case now,

ten days prior to the beginning of the trial docket, by holding that the Plaintiffs allegedly subject to the exemption have waived their FLSA claims for overtime.  Such a holding would be particularly unjust given the fact that it was never the Plaintiffs' burden to negate the City's claim that they are exempt.  Impermissibly shifting the City's burden to Plaintiffs in this manner not only would violate well-established precedent, but also would be severely prejudicial to Plaintiffs.

Finally, the City argues that no discovery has been conducted on the issue of exempt status.  If the City believed that additional discovery was necessary for it to respond to Plaintiffs' motion for summary judgment on the defense of exempt status, the City should have filed a Federal Rule of Civil Procedure 56(f) affidavit requesting additional time to respond to conduct discovery.  The City, however, filed no such affidavit.  The Court therefore concludes that the defense of exempt status is still pending before this Court.

The City argues that even if Plaintiffs have not waived the issue of exempt status, Plaintiffs have failed to satisfy their initial summary judgment burden of identifying those portions of the pleadings, depositions, interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrate the absence of a genuine issue for trial.  The City, however, mischaracterizes Plaintiffs' initial summary judgment burden.  Because Plaintiffs do not bear the burden of persuasion at trial on the City's defense that certain Plaintiffs have exempt status under the FLSA, Plaintiffs do not have the burden of pointing to specific facts in the record to negate the City's defense.  *See, e.g.*, *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (although the movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law, "a movant that will

42

not bear the burden of persuasion at trial need not negate the nonmovant's claim"); *see also Celotex*, 477 U.S. at 325.  To the contrary, to satisfy their initial burden Plaintiffs need only "point[] out to the court a lack of evidence for the [City] on an essential element of the [City's] defense.  *See Adler*, 144 F.3d at 671; *Celotex*, 477 U.S. at 325.  Once Plaintiffs satisfy this initial burden, it becomes the City's burden, because it will bear the burden of persuasion at trial, to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.  *Adler*, 144 F.3d at 671; Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

Plaintiffs have satisfied their initial summary judgment burden of pointing out to the Court that the City has a lack of evidence to support their defense that a class of Fire Department regular and paramedic lieutenants and captains are "exempt" within the meaning of the FLSA.  Plaintiffs have pointed out that the City has not "said anything to justify its exemption of these employees," and that it therefore has failed to "make a showing of the reasons it considers the employees exempt."  Accordingly, the burden shifted to the City to go beyond the pleadings and point to specific admissible facts that would allow the trier of fact to find that the employees were exempt.  The City has pointed to no specific facts, and therefore has not satisfied its summary judgment burden.  The City has failed to do so, even though it has conceded, *after* the Court's April 26, 2006, order, that this case involves the issue of exempt status for employees in the Fire Department.  *See* Resp. to Pls' Second Motion to Compel at 5 [Doc. 187].  Accordingly, the Court grants summary judgment in Plaintiffs' favor on the defense of exempt status.[18]

---

[18] The City has not argued that granting Plaintiffs' motion for summary judgment would prejudice it based upon its reliance upon the Court's April 26, 2006, order.  Although the Court already has held that the City could not have reasonably interpreted the order to remove the defense of exempt status from this case and effectively dismiss approximately 100 Plaintiffs

VI.    <u>Good Faith Defense</u>.

The City maintains that the undisputed facts demonstrate that the City's calculation of

overtime pay was made in good faith and that therefore neither liquidated damages nor a three-

year statute of limitations applies.  The FLSA provides that an employer who violates the Act by

failing to pay compensable wages is ordinarily liable for the unpaid wages and "an additional

equal amount as liquidated damages."  29 U.S.C. § 216(b).  If the employer had a good faith

belief that its actions did not violate the FLSA, however, a court may, in its sound discretion,

decline to award liquidated damages.  *Id.* § 260; *see also City of Sapulpa*, 30 F.3d at 1289.

Additionally, although ordinarily a two-year statue of limitations applies to violations of the

FLSA, if an employer acted willfully, a three-year limitations period applies.  29 U.S.C. §

255(a); *see also Brinkman v. Dep't of Corrections*, 21 F.3d 370, 372 (10th Cir. 1994).

In support of its motion, the City points to the manual entitled, "State and Local

Government Employees Under the Fair Labor Standards Act," issued by the Employment

Standards Administration, Wage and Hour Division of the Department of Labor, that it uses as a

guideline as to how FLSA pay should be calculated.  The City also maintains that it follows

specific examples set forth in the Department of Labor FLSA regulations.  In addition, the City

claims that its expert Lloyd Hill has reviewed examples of the City's pay practices, as well as the

report of Plaintiffs' expert Ms. Wagner, and has determined that the City is calculating pay

correctly in all respects and that Wagner is mistaken in her opinions.

Mr. Hill's opinions, which were rendered after the City's decision how to calculate

_____

from this litigation, if the City had raised a compelling argument, the Court may have granted
the City additional time to conduct discovery and respond to the merits of the motion.  Instead,
the City made the strategic decision to rely solely upon its waiver argument and ignore the
merits of Plaintiffs' motion entirely.

Plaintiffs' pay, are irrelevant to the question of whether the City had a good faith belief that its actions did not violate the FLSA.  The City's reliance on the FLSA regulations, is likewise irrelevant, because the examples contained therein do not sanction the City's choice to use two separate and distinct calculations, one statutory and one contractual, to determine an employee's overtime.  To the contrary, the FLSA and its regulations specifically require an employer to consider "all remuneration for employment paid to, or on behalf of, the employee."  29 U.S.C. § 207(e); 29 C.F.R. § 778.200(a).  Finally, the City's reliance upon the Department of Labor's State and Local Government Employees Under the Fair Labor Standards Act manual is not helpful.  The evidence before the Court shows only that the City purports to follow this manual. The City does not present any evidence, however, that this manual sanctions its procedure of completing two independent calculations and paying the higher of the two.  Accordingly, the City has not presented any evidence sufficient to allow the Court to conclude as a matter of law that the City acted in good faith.  The Court therefore denies the City's motion for summary judgment in its favor on this issue.

## **CONCLUSION**

**IT THEREFORE IS ORDERED** that Defendant's Motion for Summary Judgment, filed March 15, 2007 [Doc. 231], is GRANTED IN PART and DENIED IN PART as follows:

(1)     Defendant's Motion for Summary Judgment on the question of its calculation of FLSA overtime independent of the CBAs is DENIED;

(2)     Defendant's Motion for Summary Judgment on the question of the proper divisor for calculating regular rate of pay, the proper multiplier for calculating overtime, and the proper distribution of bonus pay is GRANTED;

(3)     Defendant's Motion for Summary Judgment on the question whether the City

properly includes all regularly-paid, nondiscretionary bonuses and add-ons in its calculation of the regular rate under the FLSA is DENIED; Defendant's Motion for Summary Judgment on the question whether the City improperly excluded the one-time, Mayoral bonus in its calculation of the regular rate is GRANTED;

(4)     Defendant's Motion for Summary Judgment on the question whether the City properly credits payments against its FLSA overtime liabilities is DENIED; and

(5)     Defendant's Motion for Summary Judgment on the good faith defense is DENIED.

**IT FURTHER IS ORDERED THAT** Plaintiffs' Motion for Summary Judgment, filed April 9, 2007 [Doc. 236], is GRANTED IN PART and DENIED IN PART as follows:

(1)     Plaintiffs' Motion for Summary Judgment on the question of the City's calculation of the FLSA overtime independent of the CBAs is GRANTED;

(2)     Plaintiffs' Motion for Summary Judgment on the question of the proper divisor for calculating regular rate of pay, the proper multiplier for calculating overtime, and the proper distribution of bonus pay is DENIED;

(3)     Plaintiffs' Motion for Summary Judgment on the question whether the City properly includes all regularly-paid, nondiscretionary bonuses and add-ons in its calculation of the regular rate under the FLSA is DENIED; Plaintiffs' Motion for Summary Judgment on the question whether the City improperly excluded the one-time, Mayoral bonus in its calculation of the regular rate is DENIED;

(4)     Plaintiffs' Motion for Summary Judgment on the question whether the City properly credits payments against its FLSA overtime liabilities is DENIED; and

(5)     Plaintiffs' Motion for Summary Judgment on the City's defense of exempt status

is GRANTED.


Dated this 10th day of August 2007.


JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE